UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-9179-GW(PJWx) | Date | April 24, 2017 |
|---|---|---|---|
| Title | *Paul N. Weinberg v. Dirty World, LLC, et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | | |
|---|---|---|---|
| Javier Gonzalez | Katie Thibodeaux | | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. | |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: | | |
| Gary J. Gorham - by telephone | David Scott Gingras | | |

**PROCEEDINGS:** **COUNTER-DEFENDANT'S MOTION TO DISMISS COUNTER-CLAIMANT'S COUNTERCLAIM (FRCP 12(b)(6)) [20]**

The Tentative circulated and attached hereto, is adopted as the Court's Final Ruling. The Counter-Defendant's motion is DENIED.

|  | : | 01 |
|---|---|---|
| Initials of Preparer | JG | |

<u>*Paul N. Weinberg v. Dirty World, LLC et al.*</u>; Case No. 2:16-cv-09179-GW-PJW
Tentative Ruling on Motion to Dismiss Counterclaim

I.     **Background**

On December 12, 2016, Plaintiff Paul N. Weinberg ("Weinberg") sued Defendant Dirty World, LLC (doing business as "TheDirty.com") ("Dirty World") for direct and vicarious copyright violation under the Copyright Act, 17 U.S.C. § 101 *et seq*. *See generally* Complaint, Docket No. 1.[1]

Weinberg alleges the following relevant facts:

Dirty World owns and operates a for-profit website TheDirty.com (the "website") on the internet. *Id.* ¶ 3. Dirty World generates traffic to the website, and hence profits to Dirty World, by posting infringing images and then adding, and encouraging others to add, loathsome insults. *Id.* The founder of the website is Hooman Karamian ("Karamian"), who instigates or joins in insults after a photograph or video is posted on the website. *See id.* ¶ 5.

At various times, Weinberg and his wife posted three images to their Facebook accounts: a cropped version of a portrait of his wife ("Photo 1"); a photo of Weinberg, his wife, and another couple ("Photo 2"); and a still image from a video depicting Weinberg and his wife (the "Video Image," and together with Photo 1 and Photo 2, the "Protected Works"). *See id.* ¶ 13.

The Video Image was created and is owned by a company in Belgium and first published there. *See id.* ¶ 16. Weinberg was granted and has maintained a license to use the Video Image in the United States. *See id.* In July 2016, Weinberg obtained an exclusive license to use and exhibit the Video Image within the United States. *See id.*

Without Weinberg's authorization, the Protected Works were posted on the website, after which Karamian and others ridiculed the people depicted in the Protected Works, including Weinberg and his wife. *See id.* ¶¶ 14, 21-22. Weinberg and his wife sent Dirty World take-down notices under the Digital Millennium Copyright Act ("DMCA"), but it refused to take down the Protected Works unless Weinberg and his wife first proved their case to it. *See id.* ¶ 15. After some back and forth, Dirty World eventually removed Photo 1 and Photo 2 from the website, but has not yet removed the Video Image. *See id.* ¶¶ 15, 20; *see also* Complaint, Ex. 1.

Based on the foregoing facts, Weinberg claims that Dirty World directly and vicariously infringed his rights in the Video Image by reproducing and publicly displaying it without any license, authorization, permission, or consent to do so. *See id.* ¶¶ 21-22. Weinberg requests: (1) actual damages or disgorgement of all profits attributable to Dirty World's infringement or statutory damages; (2) injunctive relief; (3) impoundment of all copies of the Video Image and destruction of all copies of the Video Image and any derivative material in Dirty World's possession or control; (4) costs, including attorneys' fees under 17 U.S.C. § 505; and (5) further relief as the Court deems proper. *Id.* at 6-7.

On January 6, 2017, Dirty World counterclaimed, alleging the following relevant facts:

---

[1] Fictitious defendants 1-10 have been ignored for this analysis.

1

Since its formation in September 2007, Dirty World has owned and operated the website. *See* Counterclaim ("CC") ¶ 8, Docket No. 14 at 6-17.  Among other things, the website allows third party users to upload content, news, photos, videos, and all forms of commentary on virtually any topic.  *Id.* ¶ 9.  As such, the subjects and topics of discussion on the website are extremely diverse and wide-ranging.  *Id.* ¶ 15.  In general, users of the website often upload photos and stories depicting unusual or controversial people, places, or events which they believe are deserving of discussion.  *Id.* ¶ 20.  Other users of Dirty World, sometimes but not always including its founder Nik Lamas-Richie ("Richie"), would post comments about the submitted material which conveys their views and opinions which may be positive, negative, or neutral.  *Id.* Many posts on the website employ a unique internet vernacular that may include abbreviations, non-literal phrases, and slang terms created either by Richie or the public in general.  *Id.* ¶ 22.

In keeping with this, on January 9, 2012, a post was submitted to the website (post no. 1128246) entitled "Porta Potties Do Fall in Love," reproduced below.  *See* ¶ 21.



That post contained a single image, which was stored on the website's servers at the direction of a third party user of the website.  *Id.* ¶ 26.[2]  That image (or photograph) depicted Weinberg in a grey shirt and his wife, Shay Londre ("Londre"), in a black dress, both appearing in the center of the photograph between another couple.  *See id.* ¶¶ 4, 28.  According to the text included in the post, the photograph depicted a young woman named Kristen Sanne ("Sanne"), who appeared to be wearing underwear or lingerie.  *Id.* ¶ 29.  The purpose of the post, viewed in the context of the website, was to comment on the conduct of, and to criticize, Sanne in terms of her clothing and general behavior.  *Id.* ¶ 30.  The use of the term "Porta Potty" in the posting was also intended to

---

[2] This is the same image referenced in Weinberg's complaint as Photo 2.  *See* Complaint ¶ 13.

2

criticize Sanne by suggesting that she was a "Gold Digger," that is, she was involved in a romantic relationship with the wealthy older gentleman, Robert Flaxman, shown in the photo. *See id.* ¶ 31. Indeed, the post specifically mentioned neither Weinberg nor Londre. *Id.* ¶ 32.

Several months after post no. 1128246 was published, on July 12, 2012, a different post was submitted to the website entitled "My Husband Flies His Own Place And It's Sexy" (post no. 1259844), reproduced below. *See* ¶ 32.



That post contained a single photograph that was also stored on the website's servers at the direction of a third party user of the website. *Id.* ¶ 34.[3] The photograph contained in that post was a single-frame screenshot taken from part of a much longer video in which Londre and Weinberg appear standing in front of a small plane. *Id.* ¶ 36. Upon information and belief, at some time prior to July 12, 2012, Londre published that photograph on her Facebook page. *Id.* ¶ 41. At that time, images and certain comments published on Londre's Facebook page were openly visible to the public. *Id.* Londre's efforts to *inter alia* promote herself have attracted attention, including the criticism found in post no. 1128246. *Id.* ¶ 42; *see also id.* ¶¶ 37-41.

In an effort to silence the criticism on the website, on January 9, 2014, Londre and Weinberg sent a letter to Dirty World (the "first DMCA notification"), demanding that Dirty World remove the images contained in post nos. 1128246 and 1259844 because those images were "infringing." *Id.* ¶ 44. Dirty World, in turn, asked Londre and Weinberg's counsel to provide original copies of allegedly infringing images to confirm that Londre and Weinberg owned the copyright to the images. *Id.* ¶ 45. Their counsel, however, refused to comply. *Id.* ¶ 48. As a result, Dirty World did not remove any images in response to the January 9, 2014 correspondence from Weinberg. *Id.* ¶ 50.

More than a year later, on August 4, 2015, Londre and Weinberg sent another letter to

---

[3] This photograph is the same image referenced in Weinberg's complaint as the Video Image. *See* Complaint ¶ 13.

3

Dirty World (the "second DMCA notification"), providing some limited additional information regarding the images at issue. *Id.* ¶ 51. In response, Dirty World removed the image contained in post no. 1128246 (that is, Photo 2). *Id.* ¶ 52.[4] Dirty World, however, did not remove the photograph in post no. 1259844 that showed Londre and Weinberg standing in front of an airplane (that is, the Video Image). *Id.* ¶ 52.

On October 27, 2015, Londre and Weinberg sent another letter to Dirty World (the "third DMCA notification"), demanding the removal of the photograph in post no. 1259844. *Id.* ¶ 53. Dirty World did not do so. *Id.* ¶ 54.

On September 6, 2016, Londre and Weinberg again sent a letter to Dirty World (the "fourth DMCA notification"), demanding the removal of the photograph in post no. 1259844. *Id.* ¶ 55. Dirty World again did not do so. *Id.*

Based on the foregoing facts, Dirty World counterclaims that Weinberg violated 17 U.S.C. § 512(f) by knowingly and materially misrepresenting in his January 9, 2014; August 4, 2015; October 27, 2015; and September 6, 2016[5] DMCA notifications that the images in question were infringing because: (1) Weinberg knew that he was neither the owner of any exclusive rights in at least one or more of the images nor authorized to act on behalf of the actual owner; and (2) Weinberg failed to consider that the use of the images was fair use under 17 U.S.C. § 107 and, as such, not infringing. CC ¶¶ 59-62. Dirty World seeks damages, attorney's fees, and costs. *Id.* ¶¶ 63-64.

Weinberg now moves to dismiss Dirty World's counterclaim. *See* Motion to Dismiss Counterclaim ("Motion"), Docket No. 20; *see also* Opp'n to the Motion ("Opposition"), Docket No. 22; Reply in Supp. of the Motion ("Reply"), Docket No. 23.[6]

## II. Legal Standard

Under Federal Rule of Civil Procedure ("Rule") 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A complaint may be dismissed for failure to state a claim for one of two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. *Bell Atl. Corp.*

---

[4] Dirty World also removed a second photograph contained in the post no. 1259844 that appeared to be a "selfie" taken by Londre in a car mirror (*see id.*), which is the same image referenced in Weinberg's complaint as Photo 1 (*see* Complaint ¶ 13). This allegation in paragraph 52 of the counterclaim, however, is contradicted by the allegation in paragraph 34, which states that post no. 1259844 "contained a single photograph[.]" *Compare* CC ¶ 52, *with id.* ¶ 34.

[5] Dirty World inconsistently pleads this date as September 9, 2016 in paragraph 58. *Compare* CC ¶ 58, *with id.* ¶ 55.

[6] Dirty World also moves to file a sur-reply, reasoning that Weinberg raises a new argument in his reply. *See* Docket No. 24 (citing Reply at 5:4-8); *see also* C.D. Cal. L.R. 7-10 ("Absent prior written order of the Court, the opposing party shall not file a response to the reply."). Indeed, Weinberg relies on a new legal authority in his reply brief to suggest that Weinberg may have a valid copyright claim to the image that Dirty World removed from the website, relying on Weinberg's representations. *See* Reply at 5 (citing *Brod v. Gen. Pub. Grp., Inc.*, 32 F. App'x 231, 234 (9th Cir. 2002)). Because Weinberg raises a new argument in his reply, which necessitated the sur-reply, the Court would not consider the argument for which that authority is cited. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) (A "district court need not consider arguments raised for the first time in a reply brief."). As such, the motion to file the sur-reply is moot. In any event, the relevant question at this motion to dismiss stage is not whether Weinberg can establish his copyright ownership, but whether such copyright ownership, or lack thereof, has been sufficiently alleged in the operative complaint and the counterclaim.

4

*v. Twombly*, 550 U.S. 544, 555 (2007); *see also Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) ("Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory.").

In deciding a Rule 12(b)(6) motion, a court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). The court may also consider material necessarily relied on by the complaint. *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001).

The court must construe the complaint in the light most favorable to the plaintiff, accept all allegations of material fact as true, and draw all reasonable inferences from well-pleaded factual allegations. *Gompper v. VISX, Inc.*, 298 F.3d 893, 896 (9th Cir. 2002); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001); *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). The court, however, is not required to accept as true legal conclusions couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Where a plaintiff facing a Rule 12(b)(6) motion has pled "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," the motion should be denied. *Id.*; *Sylvia Landfield Trust v. City of Los Angeles*, 729 F.3d 1189, 1191 (9th Cir. 2013). But if "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (alterations and citation omitted).

As a general rule, leave to amend a dismissed complaint should be freely granted. *See* Fed. R. Civ. P. 15(a). However, leave to amend may be denied if a defective pleading "could not possibly be cured by the allegation of other facts." *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).

### III. Discussion

Weinberg contends first that the DMCA false notice counterclaim based on January 9, 2014; October 27, 2015; and September 6, 2016 DMCA notifications fails as a matter of law because Dirty World alleges that it took no action in response to those notices. *See* Motion at 6. Weinberg asserts next that Dirty World fails to allege any specific fact to support Weinberg's lack of good faith in considering fair use before sending DMCA notices. *See id.* at 7-9. Weinberg argues finally that his status as an exclusive licensee or whether he is authorized to act by the copyright owner is irrelevant to false notice liability under Section 512(f). *See id.* at 9-10. Each of the arguments is unpersuasive in light of the factual allegations set forth in the counterclaim.

Section 512(c) of the Copyright Act permits a service provider such as Dirty World to avoid copyright infringement liability for storing users' content if it "expeditiously" removes or disables access to the content after receiving notification from a copyright owner in the form of a DMCA "takedown notification" that the content is infringing. *See* 17 U.S.C. § 512(c). Section 512(c)(3)(A) sets forth the elements of a takedown notification, which include: (1) identification of the copyrighted work; (2) identification of the allegedly infringing material; and, critically, (3) a representation in the form of a statement that the copyrighted owner believes in good faith

5

that the infringing material "is not authorized by the copyright owner, its agent, or the law." *Id.* § 512(c)(3)(A).

Anyone abusing the right to file DMCA takedown notification by submitting meritless claims of infringement to service providers, however, may be subject to liability under Section 512(f), which provides in relevant part that:

> Any person who knowingly materially misrepresents under this section . . . that material or activity is infringing . . . shall be liable for any damages, including costs and attorneys' fees, incurred by the alleged infringer . . . who is injured by such misrepresentation, as the result of . . . relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing[.]

17 U.S.C. § 512(f). To state a claim for misrepresentation under Section 512(f), therefore, one must allege: (1) knowing and material misrepresentation that copyright infringement has occurred by the one filing the DMCA takedown notification; (2) the alleged infringer relied on such misrepresentations; and (3) injury to the alleged infringer as a result. *Automattic Inc. v. Steiner*, 82 F. Supp. 3d 1011, 1026 (N.D. Cal. 2015) (citing *Online Policy Grp. v. Diebold, Inc.*, 337 F. Supp. 2d 1195, 1204 (N.D. Cal. 2004)).[7]

Here, Dirty World alleges the first element of knowing and material misrepresentation by claiming that Weinberg sent a DMCA takedown notification on August 4, 2015, the second DMCA notification, in which Weinberg asserted that he owned the copyright of the image used in post no. 1128246 (that is, Photo 2) and that Dirty World is infringing that copyright – that is, he asserted that Dirty World infringed his copyright in Photo 2. *See* CC ¶ 51; *see also id.*, Ex. D at 1-2 (referencing to Photo 2 and stating that "Mr. Weinberg and Ms. Londre are the copyright holders of certain photographs (the 'Photographs') posted on the Website. . . . These postings of the Photographs, and any other uses of the Photographs on the Website, are not authorized by the copyright owners, their licensees, agents, or by law. . . . This is our last request that the infringing photos be taken down, prior to suing for copyright infringement."). Dirty World also alleges that it relied on the alleged misrepresentation in the takedown notification by removing the image contained in post no. 1128246 (that is, Photo 2) from its website. *See id.* ¶ 52. Such reliance on the alleged misrepresentation is *prima facie* sufficient to support both the materiality of the misrepresentation in the first element as well as the second element of a Section 512(f) violation. *See Diebold*, 337 F. Supp. 2d at 1204 ("The misrepresentations were material in that they resulted in removal of the content from websites and the initiation of the

---

[7] Weinberg incorrectly claims that Dirty World must allege that Weinberg lacked a good faith belief that Dirty World's use constituted fair use to allege a claim for Section 512(f) violation. *See* Motion at 7-9; Reply at 4. That is a sufficient, not a necessary, condition to Section 512(f) liability. *See Automattic*, 82 F. Supp. 3d at 1026 (finding a knowing material misrepresentation of copyright infringement where the sender of the DMCA notice could not have reasonably believed that press release he had sent to blogger was "protected under copyright"). The crux of the inquiry under Section 512(f) – which must be alleged in a Section 512(f) claim – is whether the statement furnished in the DMCA notification (*i.e.* that "the complaining party has a good faith belief that the use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law" under 17 U.S.C. § 512(c)(3)(A)(v)) is false. A *showing* of such falsity – which need not be alleged – can be made by producing evidence that the complaining party lacked a good faith belief that the allegedly infringing use is fair use. *See* 17 U.S.C. § 107 ("[T]he fair use of a copyrighted work . . . is not an infringement of copyright.").

present lawsuit."); *Automattic*, 82 F. Supp. 3d at 1026.  Moreover, Dirty World sufficiently alleges knowledge of the misrepresentation component of the first element by asserting so generally.  *See* CC ¶¶ 59-61; *see also* Fed. R. Civ. P. 9(b) ("Malice, intent, *knowledge*, and other conditions of a person's mind may be alleged generally.") (emphasis added); *accord Curtis v. Shinsachi Pharm. Inc.*, 45 F. Supp. 3d 1190, 1199 (C.D. Cal. 2014).

In any event, Dirty World clearly alleges that "Weinberg knew that he was not the owner of any exclusive rights in at least one" of the images at issue, "nor was he authorized to act on behalf of any such owner" (*see* CC ¶¶ 27, 61) which further bolsters the inference that Weinberg knowingly misrepresented in the second DMCA notification that Dirty World infringed *his* copyright when he held no copyright over the image.  *Automattic*, 82 F. Supp. 3d at 1026 (finding, upon a motion for default judgment, where the court took all factual allegations in the complaint regarding liability as admitted, that defendant could not have reasonably believed that the content at issue was "protected under copyright").  Weinberg's assertion that "[s]uch statements cannot serve as a basis for liability" under Section 512(f) (*see* Motion at 9) ignores the plain fact that without ownership or authorization over the copyright, Weinberg could not have reasonably believed that he was protected by the Copyright Act or, stated differently, that Dirty World could be liable to him for copyright infringement; and as such, Weinberg knowingly misrepresented copyright infringement in his second DMCA takedown notification.  *See Iqbal*, 556 U.S. at 678 (declaring that where a plaintiff facing a Rule 12(b)(6) motion has pled "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," the motion should be denied); *see also* Schwarzer, Tashima & Wagstaffe, *Cal. Prac. Guide: Fed. Civ. Proc. Before Trial* ("Schwarzer") § 9:214.4 (The Rutter Group 2016) ("When a complaint's allegations are capable of more than one inference, the court must adopt whichever plausible inference supports a valid claim.") (citing *Starr v. Baca*, 652 F3d 1202, 1216 (9th Cir. 2011); *Watson Carpet & Floor Covering, Inc. v. Mohawk Industries, Inc.*, 648 F3d 452, 458 (6th Cir. 2011)).

Finally, Weinberg does not assert that Dirty World has not alleged injury from its reliance on the alleged misrepresentation included in the DMCA notification.  After all, Dirty World removed the allegedly infringing content from its website, eliminating any and all commentary from its community of users on that image, which, the Court can infer at this motion to dismiss stage, generates "national media attention" and, in turn, website traffic and advertising revenue for Dirty World from the website.  *See* CC ¶ 52; *see also id*. ¶¶ 13-20; Complaint ¶ 3 ("Dirty World generates traffic to TheDirty.com, and hence profits to Dirty World, by posting infringing images and then adding, and encouraging others to add, loathsome insults.").

As such, Dirty World has stated sufficient facts to support a plausible claim for misrepresentation under Section 512(f), and dismissal is not warranted under Rule 12(b)(6).  *See Automattic*, 82 F. Supp. 3d at 1026; *Mendiondo*, 521 F.3d at 1104 ("Dismissal under Rule 12(b)(6) is appropriate *only where the complaint lacks* a cognizable legal theory or *sufficient facts to support a cognizable legal theory*.") (emphases added).  Because the Court finds that Dirty World has sufficiently stated a plausible claim for Section 512(f) violation on the basis of the second DMCA notification, it need not address the sufficiency of the pleadings on the basis of the remaining DMCA notifications sent by Weinberg.

Weinberg also argues that Dirty World fails to allege any specific fact to support

7

Weinberg's lack of good faith in considering fair use before sending DMCA notices. *See* Motion at 7-9; Reply at 5-6. In light of the foregoing, specifically where Dirty World alleges that Weinberg was not the copyright owner (*see* CC ¶¶ 27, 61), Dirty World need not also plead failure to consider fair use to withstand a Rule 12(b)(6) motion. *See supra* n.7. In any event, Dirty World plainly alleges that Weinberg did not form a good faith belief that the use of the images in question was not fair because he failed to consider Dirty World's fair use, given the context (set forth in great detail in its counterclaim) in which it operates as an internet service provider. *See* CC ¶¶ 9, 13, 15-21, 59-60; *see also id.* ¶ 14 ("As of January 2017, TheDirty.com contains more than 160,000 unique posts and many tens of millions of comments submitted by third party users."); *Iqbal*, 556 U.S. at 678; Schwarzer § 9:214.4. Such factual allegations regarding the subjective condition of Weinberg's mind are sufficient, without anything more, to raise the reasonable inference that Weinberg could have believed that Dirty World's use of the relevant images constituted fair use or, relatedly, that Weinberg could not have held the belief in good faith that use of the images by Dirty World was "not authorized by . . . the law" as required under Section 512(c)(3)(A)(v). *See* Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."); *see also Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1151 (9th Cir.), *cert. denied*, 137 S. Ct. 416 (2016) ("Fair use is not just excused by the law, it is wholly authorized by the law."); *id.* at 1152 ("[17 U.S.C. § 107] explains that the fair use of a copyrighted work is permissible because it is a non-infringing use.").

> To be clear, if a copyright holder ignores or neglects our unequivocal holding that it must consider fair use before sending a takedown notification, it is liable for damages under § 512(f). If, however, a copyright holder forms a subjective *good faith* belief the allegedly infringing material does not constitute fair use, we are in no position to dispute the copyright holder's belief even if we would have reached the opposite conclusion. A copyright holder who pays lip service to the consideration of fair use by claiming it formed a good faith belief when there is evidence to the contrary is still subject to § 512(f) liability.

*Id.* (emphasis in original) (citations omitted). Moreover, as a subjective inquiry, whether or not Weinberg actually possessed a good faith belief that Dirty World's use constituted fair use is a factual determination generally resolved on the basis of evidence at summary adjudication or at trial. *See Rossi v. Motion Picture Ass'n of Am. Inc.*, 391 F.3d 1000, 1005-06 (9th Cir. 2004) (affirming a summary judgment determination that no issue of material fact existed as to defendant's good faith belief that plaintiff's website infringed upon its copyrighted materials); *Diebold*, 337 F. Supp. 2d at 1204 (finding, upon cross-motions for summary judgment, a knowing material misrepresentation of copyright infringement where "[n]o reasonable copyright holder could have believed" that copyright protection existed, at least with respect to the portions of the content clearly subject to the fair use exception, and where the claimant specifically intended its DMCA notifications to prevent publication of content); *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 456 (1984) (discussing favorably the district court's conclusion, which was based on a complete record at trial, with respect to fair use of copyrighted material); *Lenz v. Universal Music Corp.*, 815 F.3d at 1155-56, 1158 (affirming the district court's order denying the parties' cross-motions for summary judgment where plaintiff failed to

"provide evidence" "to meet a threshold showing" that defendant subjectively believed that the use in question constituted fair use); *cf. Lenz v. Universal Music Corp.*, 572 F. Supp. 2d 1150, 1156 (N.D. Cal. 2008) (finding, where, unlike here, copyright ownership was well-established, that the operative complaint sufficiently pled allegations of bad faith and deliberate ignore of fair use to withstand a Rule 12(b)(6) motion).[8]

While Dirty World may or may not ultimately prevail on its Section 512(f) claim depending on whether Weinberg subjectively formed a good faith belief that allegedly infringing material did not constitute fair use, that is a matter for another day. For now, based on the allegations set forth in the counterclaim, and under the liberal notice pleading standard of Rule 8(a)(2), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" (*see* Fed. R. Civ. P. 8(a)(2)), the Court finds that Dirty World has properly alleged a plausible claim for DMCA false notice under Section 512(f) of the Copyright Act.

## IV. Conclusion

Based on the foregoing discussion, the Court would deny the motion to dismiss.

---

[8] Weinberg also misunderstands the nature of the factual inquiry. *See* Motion at 9 ("The only allegations in Dirty World's Counterclaim that conceivably relate to fair use generally are that Weinberg's wife has made efforts to 'gain notoriety' and 'promote herself,' which has attracted 'negative attention [in the form of] the criticism found in Post #s 1128246 and 12559844.'") (citations omitted). The factual inquiry is focused on the specific use of the copyrighted work by the alleged infringer, not on the use by the copyright owner. *See* 17 U.S.C. § 107.

9